UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ZAKIYA VAUGHN, as an individual and Guardian Ad Litem for JAMONTE VAUGHN, JAMARCO VAUGHN and JALEN VAUGHN, minors and real parties in interest,

        Plaintiffs,

   v.

UNITED STATES GOVERNMENT (FBI); SACRAMENTO COUNTY SHERIFF; SACRAMENTO CITY POLICE; RICHMOND CITY POLICE; ALAMEDA COUNTY SHERIFF,

        Defendants.
_____/

NO. CIV. S-07-1119 LKK/KJM

O R D E R

Plaintiffs have brought suit against the Sacramento City Police for violations of their Fourteenth Amended rights and their rights under the "Civil Rights Act of 1966 (as amended)."[1]

---

[1] Because there is no "Civil Rights Act of 1966," the court assumes, as it did in its November 19, 2007 order, that plaintiffs intended to reference 42 U.S.C. § 1983. A law enforcement department is a person under § 1983. Anthony v. County of Sacramento, 898 F. Supp. 1435, 1451 (E.D. Cal. 1995) (citing Monell v. Dept. of Social Services of City of N.Y., 436 U.S. 658 (1978);

1

Plaintiffs allege that the police acted in a racially discriminatory manner when searching their residence for a third-party suspect. Pending before the court is the defendants' motion for summary judgment.

The court resolves the motion on the papers, without oral argument. As explained herein, defendant's motion is granted.

## I. BACKGROUND AND FACTS[2]

According to plaintiffs' complaint, plaintiff Zakiya Vaughn is the parent of Jamonte, Jamarco, and Jalen Vaughn, who are also named as plaintiffs. They allege that on June 14, 2006, officers of the City of Sacramento entered their home for the purpose of searching for the husband of Zakiya Vaughn, who was suspected of a crime. At the time, the plaintiff children were inside the home and Zakiya Vaughn was outside. The police entered the home, using "extreme force" by breaking the front door and "ransack[ed]" the premises. Amended Compl. ¶ X. While the plaintiff children were still inside, the police used tear gas in the home. Plaintiffs allege that these actions occurred pursuant to a City custom and practice of "ignor[ing] the safety of innocent parties of African-American descent who occupy premises where [the] police department

---

Shaw v. State of Cal. Dept. of Alcoholic Beverage Control, 788 F.2d 600 (9th Cir. 1986).

[2]Plaintiffs did not submit a Statement of Disputed and Undisputed Facts nor any declarations or affidavits in support of their opposition to defendants' motion. For this reason, much of what is described in this section is taken from the plaintiff's Amended Complaint, and is included simply to orient the reader to the allegations. The court does not rely on these allegations in resolving the instant motion. See Fed. R. Civ. P. 56(e)(2).

1  had suspected a law violator was also on the premises . . . ." Id.
2  During the incident, the police officers also allegedly used racial
3  epithets and racist gestures towards plaintiff Zakiya Vaughn. The
4  plaintiffs allege that their Fourteen Amendment rights and rights
5  under 42 U.S.C. § 1983 were violated. They seek damages for
6  property damage and emotional distress.

7  Defendants have tendered evidence that the City has several
8  policies that may be relevant to the incident that forms the basis
9  of the plaintiffs' causes of action, and that none of these
10 policies provide for the racial discrimination alleged. There is
11 a written policy prohibiting "biased-related enforcement actions,"
12 stating that "officers contact . . . search, and/or arrest persons
13 only in accordance with established laws, legal and ethical
14 guidelines, department recognized training standards, and in a
15 manner that is free from racial, cultural, biased or discriminatory
16 intentions." Declaration of Sergeant Robert McCloskey In Support
17 of City's Motion for Summary Judgment or Adjudication ("McCloskey
18 Decl.") ¶ 5, Ex. A. The Sacramento Police Department's written
19 policy regarding "General / Professional Conduct" similarly
20 requires that all officers "respect and protect the rights of all
21 individuals" and "act reasonably within the limits of their
22 authority as defined by statute and judicial interpretations, to
23 ensure the rights of . . . the individual . . . are protected." Id.
24 ¶ 6, Ex. B. The Department's use of force policy mandates that
25 officers "use only the amount of force which reasonably appears
26 necessary . . . ." Id. ¶ 7, Ex. C. Finally, Department policy

3

states that searches must be conducted "professionally and respectfully" and that "the safety of all concerned persons [is] the primary consideration." Id. ¶ 8, Ex. D.

As countervailing evidence, the plaintiffs have tendered evidence of a portion of a report ostensibly prepared by a consulting firm, which concluded that there was evidence of racial profiling by the Sacramento Police Department in conducting traffic stops. See Plaintiff's Response to Motion for Summary Judgment by Defendant City of Sacramento, Ex. A. The tendered excerpt of the report does not disclose when this study was conducted.

Finally, the defendant contends that it served all plaintiffs with requests for admissions, to which plaintiffs did not respond. Declaration of Marcos Kropf In Support of City's Motion for Summary Judgment or Adjudication ("Kropf Decl.") ¶¶ 2-5, Ex. A-D. Plaintiffs do not dispute this. Plaintiff's Response to Motion for Summary Judgment by Defendant City of Sacramento at 2. Accordingly, these matters are deemed admitted. Fed. R. Civ. P. 36(a)(3). These admissions include that the City of Sacramento has never violated the constitutional rights of any of the plaintiffs, the City does not have a policy of violating anyone's constitutional rights, the City does not have a policy of treating people differently based on race, the City has a policy of conducting searches and arrests in compliance with the Constitution and the law, and the City has a policy of not using racial epithets or racial gestures against anyone. SSUF ¶¶ 1-15.

**II. STANDARD FOR MOTION FOR SUMMARY JUDGMENT UNDER**

4

**FEDERAL RULE OF CIVIL PROCEDURE 56**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995).

Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of

Case 2:07-cv-01119-LKK-KJM   Document 50   Filed 09/16/08   Page 6 of 10

1 summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u>
2 at 323.
3      If the moving party meets its initial responsibility, the
4 burden then shifts to the opposing party to establish that a
5 genuine issue as to any material fact actually does exist.
6 <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
7 586 (1986); <u>see also</u> <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>,
8 391 U.S. 253, 288-89 (1968); <u>Secor Ltd.</u>, 51 F.3d at 853.
9      In attempting to establish the existence of this factual
10 dispute, the opposing party may not rely upon the denials of its
11 pleadings, but is required to tender evidence of specific facts in
12 the form of affidavits, and/or admissible discovery material, in
13 support of its contention that the dispute exists.  Fed. R. Civ.
14 P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11; <u>see also</u> <u>First Nat'l</u>
15 <u>Bank</u>, 391 U.S. at 289; <u>Rand v. Rowland</u>, 154 F.3d 952, 954 (9th Cir.
16 1998).  The opposing party must demonstrate that the fact in
17 contention is material, i.e., a fact that might affect the outcome
18 of the suit under the governing law, <u>Anderson v. Liberty Lobby,</u>
19 <u>Inc.</u>, 477 U.S. 242, 248 (1986); <u>Owens v. Local No. 169, Ass'n of</u>
20 <u>Western Pulp and Paper Workers</u>, 971 F.2d 347, 355 (9th Cir. 1992)
21 (quoting <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>,
22 809 F.2d 626, 630 (9th Cir. 1987)), and that the dispute is
23 genuine, i.e., the evidence is such that a reasonable jury could
24 return a verdict for the nonmoving party, <u>Anderson</u>, 477 U.S. 248-
25 49; <u>see also</u> <u>Cline v. Indus. Maint. Eng'g & Contracting Co.</u>, 200
26 F.3d 1223, 1228 (9th Cir. 1999).

6

1    In the endeavor to establish the existence of a factual
2 dispute, the opposing party need not establish a material issue of
3 fact conclusively in its favor.  It is sufficient that "the claimed
4 factual dispute be shown to require a jury or judge to resolve the
5 parties' differing versions of the truth at trial."  First Nat'l
6 Bank, 391 U.S. at 290; see also T.W. Elec. Serv., 809 F.2d at 631.
7 Thus, the "purpose of summary judgment is to 'pierce the pleadings
8 and to assess the proof in order to see whether there is a genuine
9 need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R.
10 Civ. P. 56(e) advisory committee's note on 1963 amendments); see
11 also Int'l Union of Bricklayers & Allied Craftsman Local Union No.
12 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

13   In resolving the summary judgment motion, the court examines
14 the pleadings, depositions, answers to interrogatories, and
15 admissions on file, together with the affidavits, if any.  Rule
16 56(c); see also In re Citric Acid Litigation, 191 F.3d 1090, 1093
17 (9th Cir. 1999).  The evidence of the opposing party is to be
18 believed, see Anderson, 477 U.S. at 255, and all reasonable
19 inferences that may be drawn from the facts placed before the court
20 must be drawn in favor of the opposing party, see Matsushita, 475
21 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654,
22 655 (1962) (per curiam)); see also Headwaters Forest Def. v. County
23 of Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000).  Nevertheless,
24 inferences are not drawn out of the air, and it is the opposing
25 party's obligation to produce a factual predicate from which the
26 inference may be drawn.  See Richards v. Nielsen Freight Lines, 602

F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### III. ANALYSIS

A public entity may only be liable under § 1983 if the constitutional violation occurred as a result of an official municipal policy or custom. Monell v. New York Dep't of Soc. Serv., 436 U.S. 658, 691 (1978). A custom that is not official agency policy may create § 1983 liability if it is "permanent and well-settled." Id.; see also Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (only a "persistent and widespread" custom, rather than "isolated or sporadic incidents" of Constitutional violations, meet the Monell standard). An agency may not be liable on a *respondeat superior* theory, but only if there is evidence that there is "an affirmative link between the policy and the specific constitutional violation alleged." City of Oklahoma v. Tuttle, 471 U.S. 808, 821 (1985).

Here, the defendant have met their initial burden on summary judgment to tender evidence that would permit a factfinder to conclude that there is no custom or policy that caused the alleged deprivation of plaintiffs' rights. Defendant has put forth evidence

8

of the official policies of the Sacramento Police Department regarding the manner in which searches are conducted, the use of force, and general directives regarding the treatment of individuals that officers encounter. See McCloskey Decl. Ex. A-D. All of these policies direct officers to act reasonably, in accordance with the law, and without racial bias. See id. Moreover, the plaintiffs have admitted that the City of Sacramento has policies of not violating the Constitutional rights of persons, of conducting searches and arrests lawfully, and of not treating persons differently based on race, of not using racial epithets or gestures. SSUF ¶¶ 11-15. The plaintiffs have also admitted that the City does not have a policy of violating the Constitutional rights of anyone nor of treating people differently based on their race. SSUF ¶¶ 9-10.

In response, the plaintiffs offer a portion of a report concluding that there are racial disparities in the Sacramento Police Department's traffic stops. See Plaintiff's Response to Motion for Summary Judgment by Defendant City of Sacramento, Ex. A. This does not suffice to show that a genuine issue of material fact exists. First, the excerpt of the report tendered as evidence does not describe when the author's observations were made, and thus is little evidence of what the City's customs were at the time of the incident involving plaintiffs. Second, even if there were a custom of performing traffic stops in a racially biased manner at the time of the event giving rise to plaintiffs' complaint, this is minimal circumstantial evidence that such a custom affected the

manner in which searches of homes for suspects were conducted. Finally, the plaintiff have not offered any evidence from which a reasonable jury could conclude that such a custom was "persistent and widespread" and was the cause of the injury of which plaintiffs complain.[3] See Trevino, 99 F.3d at 918. The paucity of plaintiffs' evidence causes the court to conclude that no reasonable jury could find in their favor at trial. See Matsushita, 475 U.S. at 587. Defendant's motion for summary judgment is therefore granted.

## IV. CONCLUSION

For the reasons stated herein, the court GRANTS defendant City of Sacramento's motion for summary judgment.

The Clerk is directed to close the case.

IT IS SO ORDERED.

DATED: September 15, 2008.

*/s/ Lawrence K. Karlton*
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[3] Because this is dispositive to the instant motion, the court need not resolve whether the injury of which plaintiffs complain constituted a violation of their rights under the Fourteenth Amendment. See Celotex, 477 U.S. at 322 ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

10